IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, LTD. *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU *et al.*,<br><br>    Defendants. | Civil Action No. 1:18-cv-295 |

**PLAINTIFFS' RESPONSE TO AMICI'S OPPOSITION
TO JOINT MOTION FOR STAY**[1]

In an amicus filing, four advocacy groups with no concrete interest in this matter contend that the Court should deny the parties' joint motion to stay the Payday Rule's compliance date while the litigation is pending. Amici's position defies common sense, has no basis in the law, and would needlessly burden the parties and this Court.

This is a textbook case for a stay of agency action. The parties seek to avoid protracted litigation over, and a judicial decision on, novel and difficult questions of constitutional law, statutory interpretation, and administrative procedure in light of ongoing regulatory proceedings that may repeal the rule and moot this case. Putting things on hold while the agency reconsiders the rule makes perfect sense, and is entirely routine. Indeed, as Judge O'Connor recently recognized in staying a challenge to an HHS rule while the agency reconsidered that rule, and blocking enforcement of the rule "throughout the duration of the stay," courts "often prefer to 'allow agencies to cure their own mistakes rather than wasting the courts' and the parties'

---

[1] Amici's motion for leave to file their opposition to the joint motion is currently pending. Plaintiffs submit this response for consideration in the event the Court grants amici leave to file.

resources.'" *Franciscan Alliance, Inc. v. Price*, No. 7:16-cv-00108, 2017 WL 3616652, at *3–*5 (N.D. Tex. July 10, 2017) (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 n.3 (D.C. Cir. 1993)).

Amici, on the other hand, seek to force the parties to litigate and the court to decide this case even though that dispute may have no real-world effect. They insist that this constitutional litigation must proceed notwithstanding "the fundamental principle of judicial restraint that courts should n[ot] anticipate a question of constitutional law in advance of the necessity of deciding it." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation marks omitted). They insist that Plaintiffs' APA claims must be adjudicated, even though doing so would require the parties and the Court to delve into a massive administrative record that includes over 800 pages of the Federal Register, *see* 82 Fed. Reg. 54,472 (Nov. 17, 2017) (450-page final rule); 81 Fed. Reg. 47,864 (July 22, 2016) (350-page proposed rule), dozens of academic studies, and more than one million public comments, *see* 82 Fed. Reg. at 54,475 ("the Bureau received and reviewed over one million comments on its proposal"). And they insist on all this, it bears repeating, even though this case will become moot if the Bureau's rulemaking results in repeal of the rule, and even though all parties agree on the proper path forward.

Amici do not dispute that a stay of the *litigation* is appropriate in light of the considerations just described. But a stay of the litigation will not work here without a corresponding stay of the rule. As explained in the joint motion, the lending restrictions imposed by the rule are scheduled to take effect in little over a year, and lenders need to adjust their operations well before then. Moreover, the Bureau has indicated that its notice of proposed rulemaking—the first step in a lengthy process—won't be ready until February 2019, just six

months before the lending restrictions go into effect. Thus, if the litigation is stayed, there needs to be a corresponding stay of the effective date of those lending restrictions to protect lenders from being forced to comply with the rule while it is under reconsideration, and to ensure they have time to comply if the Bureau opts to retain the rule. Without a stay of the rule, the only option is full-blown litigation that will require the Bureau to defend against and the Court to decide claims that, in the interests of justice and judicial economy, ought not to be decided yet. Nothing compels that absurd result. *See Franciscan Alliance*, 2017 WL 3616652, at *3–*5.

There is no merit to amici's contrary arguments. They contend that 5 U.S.C. § 705 does not apply here because there is no "rational connection" between a stay of the rule and the underlying litigation (Opp'n at 3), but, as just explained, there is precisely such a connection: the Payday Rule imposes onerous consequences on the payday-lending industry, and this lawsuit seeks to invalidate that rule before it goes into effect. A stay of the rule would therefore be warranted even if not paired with a stay of the litigation, and it is even more appropriate given the Bureau's ongoing reconsideration of the rule.

Amici's next argument, that an agency ordinarily may delay a rule's compliance date only through notice-and-comment rulemaking (Opp'n at 4), is irrelevant. Even if that were true in the absence of a pending judicial proceeding,[2] the APA imposes no such restriction on the agency where, as here, such a proceeding *is* pending. *See* 5 U.S.C. § 705 ("When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review."); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 28 (D.D.C. 2012) (agency stay pursuant to § 705 "does not constitute substantive rulemaking and therefore is not subject to

---

[2] *But see Memorandum Delaying Proposed and Pending Regulations*, 5 Op. Off. Legal Counsel 55, 56 (1981) (concluding that agencies need not use notice-and-comment rulemaking to suspend the effective date of regulations).

notice and comment requirements" (internal citation omitted)).  And the APA certainly does not impose such a restriction where, as here, the agency requests that a *court* stay the compliance date.  Indeed, a court may even set aside a rule at the agency's request.  *See, e.g.*, *Sierra Club v. EPA*, 705 F.3d 458, 460, 463–64 (D.C. Cir. 2013) (granting agency's request to vacate and remand concededly invalid portions of rule); *Home Builders Ass'ns v. Norton*, 293 F. Supp. 2d 1, 5 (D.D.C. 2003) (entering consent decree vacating rule and remanding for new rulemaking).  And if a court can *invalidate* a rule based on agency consent, *a fortiori* it may take the lesser step of staying the rule's compliance date while the agency is reconsidering that rule.

All but accusing the Bureau of proceeding in bad faith, amici also contend that the Bureau could "draw out the rulemaking process for as long as it wishes," thereby making "an end-run around the APA's statutory requirements" by "essentially repealing the rule" without notice and comment.  Opp'n at 4 & n. 1.  Not so.  To be clear, the purpose of the requested stay is to give the Bureau the opportunity to reconsider the rule *by means of* notice-and-comment rulemaking; that is the opposite of an end run around the APA.  Moreover, the parties' proposed order requires the Bureau to submit status reports every sixty days to ensure that the agency is acting in good faith and with reasonable dispatch, and the Court could dissolve the stay and order the Bureau to litigate if it is not.  *See Franciscan Alliance*, 2017 WL 3616652, at *4 n.8 ("to encourage timely review of the Rule, the Court will continue to exercise jurisdiction over the case, requiring periodic status reports on the rulemaking proceedings").

Nor is there any merit to amici's alternative argument that this Court must entertain full briefing and argument on the four-factor test governing a stay pending appeal.  Even assuming

arguendo that this four-factor test applies,[3] amici cite no authority for the proposition that a court should disregard a defendant's concession that the test has been satisfied.  Such a rule would needlessly expend judicial resources on what is essentially an advisory opinion where there is no dispute between the parties and the underlying controversy is currently dormant and may never be revived.  In short, it makes no sense to require the Court to address the merits, without adversarial briefing, of complex constitutional and statutory issues simply to decide whether to delay the proceedings until it can be determined whether those constitutional and statutory disputes will be "live" or moot.

In any event, the four-part test is easily satisfied here.  First, as explained in the joint motion, Plaintiffs' members will obviously suffer irreparable harm if forced to comply with the rule, and if forced to prepare for compliance with the rule.  As discussed, the timeline is simply too short to avoid that harm without a stay, especially if litigation is postponed or delayed pending the Bureau's reconsideration of the rule.

Second, as the Bureau itself acknowledges, there are at least serious questions on the merits.  *See Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011) ("where there is a serious legal question involved and the balance of equities heavily favors a stay … the movant only needs to present a substantial case on the merits").  Take, as just one example, Plaintiffs' principal constitutional claim, namely, that the statutory restrictions on the President's power to remove the Bureau's director violate the separation of powers.  This obviously raises serious merits questions because a panel of the D.C. Circuit accepted this argument.  *See PHH Corp. v. CFPB*, 839 F.3d 1 (2016).  Moreover, recognizing the seriousness and importance of

---

[3] The text of the APA requires a showing of irreparable injury, but does not refer to the other factors.  *See* 5 U.S.C. § 705.

this issue, the D.C. Circuit reviewed that decision *en banc*. *See PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018). The United States sided with the challengers. Though a divided court rejected the claim, the judges who did so could not agree on a rationale, *compare id.* at 76 (majority op.) *with id.* at 124 (Griffith, J., concurring in the judgment), and there were two powerful and persuasive dissenting opinions, *see id.* at 137 (Henderson, J., dissenting); *id.* at 164 (Kavanaugh, J., dissenting). All told, these decisions fill 128 pages of the Federal Reporter, further demonstrating both the complexity of the issue and that it is a serious question on the merits. Likewise, the Fifth Circuit's recent decision to allow an interlocutory appeal in another case on this precise issue establishes that there is, at a minimum, "a substantial ground for difference of opinion as to that question," 28 U.S.C. § 1292(b). *See* Order Granting Mot. for Leave To Appeal, *CFPB v. All American Check Cashing Inc.*, No. 18-90015 (5th Cir. Apr. 24, 2018).

    Third, there is no countervailing harm to the Bureau, which likewise wants a stay to avoid the burdens of litigation. Amici's contention that a stay would tie the hands of a future director is wrong, since a stay only gives the Bureau time to resolve what, if anything, it will do with the existing Payday Rule. Fourth, the public interest will be served by avoiding needless, academic litigation over a rule that may cease to exist.[4]

    For these reasons, and those set forth in the joint motion, the Court should stay the litigation and stay the rule's compliance date in accordance with the terms requested in the joint motion.

---

[4] As noted in the joint motion, should the Court determine that additional explanation of the factors warranting a stay would help it resolve the motion, the parties stand ready to provide the Court with briefing upon request.

Dated: June 11, 2018

Respectfully submitted,

/s/ *Michael A. Carvin*
MICHAEL A. CARVIN
 D.C. Bar No. 366784
 Admitted *pro hac vice*
 macarvin@jonesday.com
CHRISTIAN G. VERGONIS
 D.C. Bar No. 483293
 Admitted *pro hac vice*
 cvergonis@jonesday.com
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

LAURA JANE DURFEE
 Texas Bar No. 24069653
 ldurfee@jonesday.com
**JONES DAY**
2727 North Hardwood Street
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of June 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Laura Jane Durfee*
Laura Jane Durfee