**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, LTD., and CONSUMER SERVICE ALLIANCE OF TEXAS, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and JOHN MICHAEL MULVANEY, <br><br> Defendants. | Civil Action No. 1:18-cv-295-LY |

**MEMORANDUM OF AMICI CURIAE PUBLIC CITIZEN, INC., AMERICANS FOR FINANCIAL REFORM EDUCATION FUND, CENTER FOR RESPONSIBLE LENDING, AND NATIONAL CONSUMER LAW CENTER IN OPPOSITION TO THE PARTIES' JOINT MOTION FOR A STAY OF AGENCY ACTION PENDING REVIEW**

On May 31, 2018, the parties to this action filed a joint motion asking the Court to stay both this litigation and the principal compliance date of the Consumer Financial Protection Bureau (CFPB)'s regulation on payday, vehicle title, and certain high-cost installment loans, 12 C.F.R. part 1041 ("Payday Rule"), at issue in the case. In support of their request for a stay of the rule's compliance date, the parties rely on the Administrative Procedure Act (APA), 5 U.S.C. § 705. Because section 705 does not authorize a stay in the circumstances of this case and because the Court lacks adversarial presentation on the issue, amici consumer-advocacy groups offer this amicus curiae memorandum to fill in the gaps left by the parties and to explain why the parties cannot properly achieve through a stay the indefinite postponement of the regulation. Instead, if the CFPB wants to delay the compliance date of its own regulation, it must follow the APA's procedures for agency rulemaking.

## BACKGROUND

In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (Dodd-Frank Act), to address the market and regulatory failures that fueled the 2008 financial crisis. One key problem, Congress concluded, was "that the financial services industry had pushed consumers into unsustainable forms of debt and that federal regulators had failed to prevent mounting risks to the economy." *PHH Corp. v. CFPB*, 881 F.3d 75, 77 (D.C. Cir. 2018) (en banc). "Congress saw a need for an agency to help restore public confidence in markets: a regulator attentive to individuals and families. So [with Title X of the Dodd-Frank Act,] it established the Consumer Financial Protection Bureau." *Id.*; *see also id.* at 80-81.

In 2017, after more than five years of outreach and research, the CFPB issued the Payday Rule to address consumer harms caused by three types of loans: (a) payday loans, "short-term small-dollar loans generally repayable in a single payment due when the consumer is scheduled to receive a paycheck or other inflow of income," 82 Fed. Reg. 54472, 54476 (Nov. 17, 2017), (b) vehicle title loans, in which the lender "retains [a] vehicle title or some other form of security interest that provides it with the right to repossess the vehicle," *id.* at 54490, and (c) certain other loans that are similar in relevant ways, *id.* at 54472-73, 54496. *See generally id.* at 54472, 54503-19. The CFPB developed the rule because it was "concerned that lenders" in these markets "have developed business models that deviate substantially from the practices in other credit markets" and that "[a]s a result of [the] dynamics, a substantial population of consumers ends up in extended loan sequences of unaffordable loans." *Id.* at 54472. The rule identifies and, with certain exceptions, prohibits two unfair and abusive lender practices in the relevant credit markets: (1) "mak[ing] … loans without reasonably determining that the consumers will have the ability to

1

repay the loans," 12 C.F.R. § 1041.4, and (2) "attempt[ing] to withdraw payment from consumers' accounts in connection with a covered loan" after two consecutive such attempts have failed due to a lack of funds, *id*. § 1041.7. *See generally* 12 U.S.C. § 5531(b) (describing the CFPB's rulemaking authority regarding unfair or abusive acts or practices).

Shortly after the CFPB finalized the Payday Rule, the then-director stepped down and the President named Mick Mulvaney to serve as the CFPB's acting director until a new permanent director could be confirmed by the Senate. *See English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018) (appeal pending) (regarding legality of Mulvaney as acting director). Nearly immediately, Mulvaney made clear his intention to change or eliminate the Payday Rule. He announced that the CFPB would "reconsider" the rule and encouraged companies to ask for waivers of the rule's first deadline. Joint Mot. (Dkt. 16) ¶ 4; CFPB, *CFPB Statement on Payday Rule*, https:// www.consumerfinance.gov/about-us/newsroom/cfpb-statement-payday-rule/ (Jan. 16, 2018).

## ARGUMENT

The parties jointly request that the Court issue a section 705 stay of the compliance date established in the Payday Rule. Section 705 provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court … may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

Section 705 cannot properly be invoked here for three reasons.

First, the parties' suggestion that the Court should grant a stay of the Payday Rule, while at the same time staying the litigation, is at odds with the clear meaning of section 705: that a court may stay agency action for the purpose of maintaining the status quo during judicial review.

Second, alterations to the Payday Rule, including its compliance date, can lawfully be accomplished only through a rulemaking process that complies with the APA's procedural and substantive requirements. The Court should reject the parties' attempt to jerry rig non-adversarial litigation to effect an end-run around the APA's statutory requirements.

Third, courts evaluating section 705 stays apply the same four-part test used to assess requests for stays pending appeal. The parties have not shown that the test is satisfied, and it is not.

## I.       A section 705 stay does not apply here, where the parties are not seeking to maintain the status quo to protect against litigation uncertainties.

Section 705 was enacted "to make judicial review effective." H.R. Rep. No. 79-1980, at 277 (1946), *available at* https://www.justice.gov/jmd/ls/administrative-procedure-act-pl-79-404; S. Rep. No. 79-752, at 213 (1945) (similar). Thus, a Court cannot grant a section 705 stay "simply because litigation … *happens to be pending*." *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 34 (D.D.C. 2012) (emphasis in original). There must be "at a minimum, a rational connection between [a] stay and the underlying litigation." *Id.*; *see also id.* at 29-30 (stating that a section 705 stay must satisfy the same standard, whether it is issued by a court or an agency). The parties' joint motion does not suggest any such rational connection. For that reason alone, the Court should deny the section 705 stay.

Principally, the parties urge the Court to stay the compliance date "because the Bureau's decision to initiate rulemaking to reconsider the Payday Rule creates inherent uncertainty." Joint Mot. (Dkt. 16) ¶ 10. Any such uncertainty, however, is not attributable to this litigation, and thus offers no basis for a section 705 stay. Moreover, the parties' suggestion that "judicial review is unlikely to be complete before August 19, 2019," *id.*, is a circumstance of their own making. This lawsuit was filed in April 2018. Judicial review will not be complete before August 2019 only because the parties themselves have asked for the Court to pause the litigation. Section 705 cannot

properly be used as the basis for a stay where the parties are not litigating and have no intention to do so.

## II.   The Court should deny the parties' attempt to use section 705 as an end-run around the APA's requirements.

Because the parties seek both a section 705 stay and a stay of this litigation, a section 705 stay would postpone the Payday Rule's compliance date indefinitely, essentially repealing the rule.[1] This result would be an end-run around the APA's statutory requirements.

Ordinarily, an agency can delay a rule's compliance date—or repeal a rule—only by undertaking a notice-and-comment rulemaking that satisfies the requirements of the APA. *See Clean Air Council v. Pruitt*, 862 F.3d 1, 8-9 (D.C. Cir. 2017); *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 162-63 (D.D.C. 2017) (collecting citations regarding the substantive nature of such a delay). The APA's requirements are both procedural and substantive; the statute requires the agency to seek and consider public comments, *see* 5 U.S.C. § 553(b), (c), as well as to "consider[] the relevant factors and articulate[] a rational connection between the facts found and the choice made," *Coastal Conservation Ass'n v. U.S. Dep't of Commerce*, 846 F.3d 99, 111 (5th Cir. 2017) (discussing the requirements of 5 U.S.C. § 706(2)(A)).

The CFPB should not be permitted, through this litigation sleight-of-hand, "to circumvent the notice and comment requirements" simply because the "agency finds it inconvenient to follow them." *U.S. Steel Corp. v. U.S. EPA*, 595 F.2d 207, 214 (5th Cir.) (concluding that an exception to notice-and-comment procedures should not apply), *clarified by* 598 F.2d 915 (5th Cir. 1979).

---

[1] The parties ask the Court to push the compliance date off until 445 days after the final judgment in this litigation—litigation that they seek to stay until after the CFPB completes a new rulemaking process to "reconsider" the Payday Rule. Because that new rulemaking process has no deadline, the CFPB could draw out the rulemaking process for as long as it wishes, and thus make the stay indefinite.

**III.     The standard for issuance of a section 705 stay is not satisfied here.**

The parties' joint motion notes that the Court, in considering a section 705 stay, must consider the same four factors that apply to a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies," *Texas v. U.S. EPA*, 829 F.3d 405, 424 (5th Cir. 2016); *see also id*. at 435. The requested section 705 stay does not come close to satisfying this standard.

First, the parties make little effort to show any likelihood of plaintiffs' success on the merits. Although they suggest that a "serious legal question" can reduce their burden on this factor, the parties neither identify any "serious legal question" nor explain how they satisfy even their proposed lesser standard, for a "substantial case on the merits." They assert that plaintiffs have presented such a case "on at least some of their claims" only in conclusory fashion and without even pointing to a particular claim. *See* Joint Mot. (Dkt. 16) ¶ 11. Indeed, it is hard to imagine what legal question the parties could possibly agree is "serious" or one on which the plaintiffs have a "substantial case." In the Federal Register notice issuing the Payday Rule, the CFPB addressed and rejected comments suggesting that its structure and delegated authority were unconstitutional—issues that are at the heart of plaintiffs' first two claims in this case. *See* 82 Fed. Reg. at 54523. Further, in litigation, the CFPB has defended the constitutionality of its structure, and the D.C. Circuit has upheld the CFPB's structure against a constitutional challenge. *See PHH*, 881 F.3d 75; *see also CFPB v. Seila Law, LLC*, No. 8:17-cv-01081-JLS-JEM, 2017 WL 6536586, at *2 (C.D. Cal. Aug. 25, 2017). Similarly, the CFPB has addressed and rejected comments suggesting that the Payday Rule exceeds the agency's statutory authority—concerns that are at the

heart of plaintiffs' third claim. *See* 82 Fed. Reg. at 54523-24, 54549, 54583-624, 54626-27, 54730-44, 54815. The remainder of plaintiffs' claims involved procedural and substantive rulemaking requirements that the CFPB concluded were satisfied when it finalized the Payday Rule.

Second, the plaintiffs have not made any showing that they will suffer irreparable injury absent a stay pending review. They reference business costs but provide no actual information as to whether any individual member of the plaintiff associations intends to spend money on compliance with the Payday Rule before the date when this lawsuit—if it were litigated—could reasonably be expected to end.[2] Based on the conclusory assertions in the joint motion, it is equally likely that, if this case were litigated, plaintiffs' members could—and would—forestall spending money on compliance costs until the resolution of the case, and still be able to meet the current August 2019 compliance date.

Third, the parties have not considered the impact of their request on the CFPB. Stalling the CFPB's rule would harm the agency's ability to pursue its mission, which includes, as a principal objective, protecting consumers against unfair and abusive practices. *See* 12 U.S.C. § 5511(b)(2). Moreover, if the Court grants the parties' request for a court-ordered stay, it would bind the agency and its next director, based on the request of an *acting* director, who serves only temporarily and at the pleasure of the president. *See generally English v. Trump*, 279 F. Supp. 3d 307. This result would be in tension with the agency's establishment as an independent agency headed by a Senate-confirmed director. *See* 12 U.S.C. § 5491(a), (b).

Fourth, the parties offer no analysis of how a stay would impact the public interest. Most glaringly, they do not even mention the impact of a stay on the consumers who the Payday Rule

---

[2] The parties' joint motion makes repeated references to entities applying to be "registered information systems," *see, e.g.,* Joint Mot. (Dkt. 16) ¶ 12, but does not assert that either the plaintiffs or any of their members are seeking to become "registered information systems."

intends to protect. That failure alone should be fatal to the parties' request for a section 705 stay. *See* H.R. Rep. No. 79-1980, at 277-78 ("In determining whether agency action should be postponed, the court should take into account that persons other than parties may be adversely affected by such postponement."). The CFPB had earlier concluded, for example, that the Payday Rule will

> benefit consumers by reducing the harm they suffer from the costs of extended sequences of payday loans and single-payment auto-title loans, from the costs of delinquency and default on these loans, from the costs of defaulting on other major financial obligations, and/or from being unable to cover basic living expenses in order to pay off [loans covered by the rule]. Borrowers will also benefit from lenders adjusting their loan terms or their product mix, so that future loans are more predictable and ultimate repayment is more likely.

82 Fed. Reg. at 54835. Indefinite delay of the Payday Rule will mean an indefinite delay of these benefits, a substantial and important harm.

## CONCLUSION

For the foregoing reasons, the Court should deny the parties' joint motion for a stay of agency action pending review.

Dated: June 2, 2018                          Respectfully submitted,

/s/ Aaron Johnson

Aaron Johnson (TX Bar No. 24056961)
Equal Justice Center
510 S. Congress Avenue, Suite 206
Austin, Texas 78704
(512) 474-0007
Fax: (512) 474-0008
ajohnson@equaljusticecenter.org

Rebecca Smullin (DC Bar No. 1017451)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
Fax: (202) 588-7795

rsmullin@citizen.org

*Counsel for Amici Curiae Public Citizen, Inc., Americans for Financial Reform Education Fund, Center for Responsible Lending, and National Consumer Law Center*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for all parties.

/s/ Aaron Johnson

Aaron Johnson