2020 WL 7705549
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

CONSUMER FINANCIAL PROTECTION
BUREAU, Petitioner-Appellee,
v.
SEILA LAW LLC, Respondent-Appellant.

No. 17-56324
|
Argued and Submitted November
19, 2020 San Francisco, California
|
Filed December 29, 2020

**Attorneys and Law Firms**

Anthony R. Bisconti (argued) and Thomas H. Bienert Jr., Bienert Katzman PC, Los Angeles, California; Kannon K. Shanmugam, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; for Respondent-Appellant.

Kevin E. Friedl (argued) and Christopher J. Deal, Attorneys; Steven Y. Bressler, Assistant General Counsel; John R. Coleman, Deputy General Counsel; Mary McLeod, General Counsel; Consumer Financial Protection Bureau, Washington, D.C.; for Petitioner-Appellee.

On Remand From the United States Supreme Court, D.C. No. 8:17-cv-01081-JLS-JEM

Before: Susan P. Graber and Paul J. Watford, Circuit Judges, and Jack Zouhary, [*] District Judge.

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## OPINION

WATFORD, Circuit Judge:

In February 2017, the Consumer Financial Protection Bureau (CFPB) issued a civil investigative demand (CID) to Seila Law LLC, requiring the firm to produce documents and answer interrogatories. Seila Law refused to comply. In June 2017, the CFPB filed a petition to enforce the CID. The

district court granted the petition and we affirmed. *CFPB v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019). Upon review of our court's decision, the Supreme Court held that the statute establishing the CFPB violated the Constitution's separation of powers by placing leadership of the agency in the hands of a single Director who could be removed only for cause. *Seila Law LLC v. CFPB*, —— U.S. ——, 140 S. Ct. 2183, 2197, 207 L.Ed.2d 494 (2020). The Court concluded, however, that the for-cause removal provision could be severed from the rest of the statute and thus did not require invalidation of the agency itself, as Seila Law had urged. *Id.* at 2209–11 (plurality opinion); *id.* at 2245 (Kagan, J., concurring in judgment with respect to severability and dissenting in part). The Court vacated our judgment and remanded so that we could consider in the first instance "whether the civil investigative demand was validly ratified" by former Acting Director Mick Mulvaney during his year-long stint in that office. *Id.* at 2208, 2211.

We conclude that the CID was validly ratified, but we need not decide whether that occurred through the actions of Acting Director Mulvaney. On July 9, 2020, after the Supreme Court's ruling, the CFPB's current Director, Kathleen Kraninger, expressly ratified the agency's earlier decisions "to issue the civil investigative demand to Seila Law, to deny Seila Law's request to modify or set aside the CID, and to file a petition requesting that the district court enforce the CID." At the time that she ratified these decisions, Director Kraninger knew that the President could remove her with or without cause. She nonetheless ratified the agency's issuance of the CID and ongoing efforts to enforce it.

Director Kraninger's ratification remedies any constitutional injury that Seila Law may have suffered due to the manner in which the CFPB was originally structured. Seila Law's only cognizable injury arose from the fact that the agency issued the CID and pursued its enforcement while headed by a Director who was improperly insulated from the President's removal authority. Any concerns that Seila Law might have had about being subjected to investigation without adequate presidential oversight and control have now been resolved. A Director well aware that she may be removed by the President at will has ratified her predecessors' earlier decisions to issue and enforce the CID.

Seila Law advances two arguments challenging the validity of Director Kraninger's ratification, neither of which we find persuasive.

As a threshold matter, Seila Law contends that Director Kraninger could not validly ratify the CFPB's earlier actions because the agency lacked the authority to take those actions back in 2017. Seila Law bases this argument on the statement in *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994), that "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." *Id.* at 98, 115 S.Ct. 537 (emphasis omitted). In Seila Law's view, until the Supreme Court invalidated the for-cause removal provision, the CFPB was exercising executive power unlawfully, which in turn rendered all of the agency's prior actions void at the time they were taken and hence incapable of being ratified.

 **\*3**  Seila Law's argument is largely foreclosed by our court's decision in *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016). In that case, the CFPB initiated an enforcement action after Richard Cordray had been appointed as the agency's Director pursuant to President Obama's recess appointment power. *Id.* at 1185–86. Shortly thereafter, the Supreme Court's decision in *NLRB v. Noel Canning*, 573 U.S. 513, 134 S.Ct. 2550, 189 L.Ed.2d 538 (2014), called into question the validity of Director Cordray's appointment. After he was renominated and confirmed by the Senate, Director Cordray issued a blanket ratification of all actions he had taken while serving as a recess appointee. *Gordon*, 819 F.3d at 1185–86. We held that Director Cordray's ratification cured any Appointments Clause defect in the initiation of the enforcement action against the defendant. *Id.* at 1192. Addressing the same passage from *NRA Political Victory Fund* quoted above, we reasoned that the constitutional defect was limited to Director Cordray and did not infect the agency as a whole. Thus, the CFPB *as an agency* had the authority to bring the enforcement action both at "the time the act was done" and at "the time the ratification was made." *Id.* at 1191–92.

The same is true here. Just as in *Gordon*, the constitutional infirmity relates to the Director alone, not to the legality of the agency itself. Although the Supreme Court held in *Seila Law* that the CFPB's "structure" violated the separation of powers, 140 S. Ct. at 2192, the Court explained that "[t]he only constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal." *Id.* at 2209. Nothing in the Court's decision suggests that it believed this defect rendered all of the agency's prior actions void. Indeed, had that been the Court's view, it presumably would have ordered the dismissal of this proceeding rather than

remanding for us to consider whether the agency's actions relating to the CID had been validly ratified.

We find strong support for our holding in *Federal Election Commission v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996), a case cited with approval in *Gordon*. 819 F.3d at 1191. In *Legi-Tech*, the Federal Election Commission brought a civil enforcement action while two congressional officers were impermissibly serving as *ex officio* members of the Commission. 75 F.3d at 706. After the presence of those members was held to violate the separation of powers, the Commission reconstituted itself and ratified its earlier decision to bring the enforcement action. *Id.* at 706, 708. The D.C. Circuit held that the ratification was valid and, in doing so, rejected the same argument Seila Law advances here— namely, that a "structural" constitutional defect in an agency's composition renders all of the agency's prior actions void. *Id.* at 708–09. Taken together, *Legi-Tech* and *Gordon* confirm that ratification is available to cure both Appointments Clause defects and structural, separation-of-powers defects.

Seila Law's remaining argument is that Director Kraninger's July 2020 ratification is invalid because it took place outside the limitations period for bringing an enforcement action against Seila Law. In support of its position, Seila Law again relies on the Supreme Court's decision in *NRA Political Victory Fund*—in particular, its holding that the Solicitor General could not validly ratify the filing of an unauthorized petition for certiorari when the attempted ratification occurred after the time for filing the petition had already run. 513 U.S. at 98, 115 S.Ct. 537.

The statute of limitations relevant here states that, "[e]xcept as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). According to Seila Law, the "date of discovery of the violation" was February 18, 2016, when the CFPB filed an application (in a proceeding brought against a different entity) that accused Seila Law of wrongdoing. Alternatively, Seila Law contends that the limitations period began to run at the very latest on February 27, 2017, when the CFPB issued the CID at issue.

 **\*4**  Seila Law's argument fails because this statutory limitations period pertains solely to the bringing of an enforcement action, which the CFPB has not yet commenced against Seila Law. The only actions ratified by Director Kraninger are the issuance and enforcement of the CID. The

very purpose of such a demand is to assist the agency in determining *whether* Seila Law has engaged in violations that could justify bringing an enforcement action; it is impossible to know at this point whether such an action would (or would not) be timely.

Whether Seila Law would be able to mount a successful statute-of-limitations defense in a future enforcement action has no bearing on the validity of Director Kraninger's ratification. "[A] party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1429 (9th Cir. 1983) (en banc). We have applied that principle specifically in the statute-of-limitations context. In *Pacific Maritime Association v. Quinn*, 491 F.2d 1294 (9th Cir. 1974), the employer resisted a demand for documents from the Equal Employment Opportunity Commission on the ground that the employee's underlying discrimination complaint was

untimely. *Id.* at 1295. We stated that the "statute of limitations issue has been raised prematurely" and held that the demand should be enforced so that the agency could investigate whether there was a continuing violation that would render the complaint timely. *Id.* at 1296. Seila Law has similarly raised its statute-of-limitations argument prematurely.

For the reasons given in our earlier decision, we reject Seila Law's arguments challenging the CFPB's statutory authority to issue the CID. 923 F.3d at 684–85. Accordingly, we reaffirm the district court's order granting the CFPB's petition to enforce the CID.

**AFFIRMED.**

**All Citations**

--- F.3d ----, 2020 WL 7705549

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.