# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, LTD., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> *Defendants.* | Civil Action No. 1:18-cv-295 |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION
## TO LIFT STAY OF COMPLIANCE DATE

In 2018, this Court stayed the compliance date of the Bureau's 2017 Payday Rule under § 705 of the Administrative Procedure Act. ECF No. 53. That stay was warranted at the time because (1) Plaintiffs had presented a "substantial case on the merits" of their claim that the Rule had been improperly promulgated by a Bureau Director who was unconstitutionally insulated from removal by the President, and (2) the balance of equities tipped heavily in favor of a stay given that part of the Rule (the "Underwriting Provisions") threatened to put many lenders out of business and the Bureau planned to revisit the Rule through rulemaking anyway.

All of that has changed. Plaintiffs no longer have a "substantial case on the merits"—let alone a likelihood of success—because recent Supreme Court precedent confirms that the unconstitutional removal provision that previously applied to the Bureau's Director provides no basis to set aside the Rule. And the balance of equities no longer tips in favor of a stay, let alone heavily: The Bureau has completed its rulemaking reconsidering the 2017 Rule and has repealed those portions—the Underwriting Provisions—that would have required fundamental changes to

lenders' businesses and caused many to shut down. What remains are the Payment Provisions, which impose modest requirements for lenders to provide certain disclosures and to obtain additional authorization before attempting to withdraw payment from a consumer's account after two consecutive attempts have failed. Having to comply with those requirements does not threaten Plaintiffs with substantial irreparable harm—and any harm they face is easily outweighed by the Bureau's and the public's interest in having the Payment Provisions' important protections finally take effect.

Plaintiffs agree that lifting a stay "is appropriate when the legal or factual circumstances justifying the [stay] have changed." *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018); ECF No. 97 at 5. Here, all the circumstances that initially justified the stay have changed, and the Court should therefore lift it.

## ARGUMENT

### I. Plaintiffs Can No Longer Establish a Substantial Case on the Merits, Much Less a Likelihood of Success

Plaintiffs do not dispute that the only basis either party ever gave for why Plaintiffs had established a substantial enough case on the merits to support a stay of the Payment Provisions' compliance date was that the Rule was promulgated by a Bureau Director who was subject to a statutory provision that purported to limit the President's ability to remove him.[1] ECF No. 95 at 5; *see generally* ECF No. 97. Circumstances have changed: Last summer, after the Supreme Court made clear that the removal restriction was invalid, a Bureau Director indisputably subject

---

[1] Plaintiffs object that the Bureau does not explain why Plaintiffs are unlikely to prevail on their APA claims. ECF No. 97 at 10. But the APA claims were not the basis for the stay—Plaintiffs never asked the Court to stay the Rule on that basis. *See* ECF Nos. 16, 30 (not citing any claim that Plaintiffs believed supported a stay); ECF No. 25 at 5-6 (seeking a stay on the basis of the removal-provision claim alone). In any event, the Bureau's summary judgment briefing shows why those APA claims are meritless. ECF No. 82 at 26-40; ECF No. 85 at 11-24.

2

to the President's plenary oversight ratified the Payment Provisions.  85 Fed. Reg. 41905 (July 13, 2020).  Given that, Plaintiffs cannot now credibly claim that the (previous) unconstitutional removal provision is in any way responsible for their obligation to comply with the Payment Provisions.  "Constitutional litigation is not a game of gotcha," *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2351 (2020), and setting aside a rule that the President's fully accountable subordinate approved would undermine, not protect, the President's constitutional powers.

Any lingering doubt about whether relief is appropriate in these circumstances was dispelled by the Supreme Court's recent decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), as the Bureau explained in recent filings.  ECF Nos. 90, 92, 97.  *Collins* flatly rejects Plaintiffs' claim (ECF No. 97 at 7) that the removal provision that previously insulated the Bureau's Director from removal means that the 2017 Payday Rule was "void *ab initio*." *Collins*, 141 S. Ct. at 1787 (rejecting identical argument as "neither logical nor supported by precedent").  Because the officers in *Collins* had been properly appointed—just as the Bureau Director was here—there was "no reason to regard any of the actions taken by the [agency] … as void." *Id.* Instead, *Collins* holds that challengers can obtain relief only if the removal-provision violation actually "cause[d] harm." *Id.* at 1789.

Here, Plaintiffs are not entitled to relief because the unconstitutional removal provision did not cause them any harm.  Even if the removal restriction prevented President Trump from firing Director Cordray, President Trump's own appointee, whom President Trump had plenary authority to remove at will, expressly approved the Payment Provisions.  *See* 85 Fed. Reg. 41905.  Given that, Plaintiffs cannot credibly claim that the removal restriction is to blame for their obligation to comply with those Provisions.

Nor can Plaintiffs escape *Collins* on the ground that *Collins* involved a contractual agreement, not a rule, and retrospective monetary relief, not prospective injunctive relief. ECF No. 97 at 8-9. The Bureau has already explained why those distinctions are irrelevant. ECF No. 92 at 1-2. *Collins* makes clear that "the unlawfulness of the removal provision does not strip the Director of the power to undertake the … responsibilities of his office," period, whether those responsibilities are entering contracts, promulgating a rule, or something else. 141 S. Ct. at 1788. So, the Bureau had authority to promulgate the 2017 Payday Rule. And there is no basis to distinguish the retrospective remedies sought in *Collins* from the prospective injunctive relief that Plaintiffs seek here. ECF No. 92 at 2. *Collins* did not "erect[] an additional barrier" for retrospective relief (*contra* ECF No. 97 at 8); it simply applied the ordinary remedial principle that relief—of whatever type—is available only where a constitutional violation actually "cause[d] harm." *Collins*, 141 S. Ct. at 1789; *accord, e.g.*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286 (1977) (distinguishing "between a result caused by a constitutional violation and one not so caused" and authorizing relief only for the former).

For these reasons, Plaintiffs can no longer establish even a substantial case on the merits of the only claim they ever offered in support of the stay (or, indeed, any other claim challenging the Payment Provisions)—and staying the Payment Provisions is no longer appropriate for that reason alone. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020) (stay is appropriate only if challenger establishes "likelihood of success" or, at a minimum, a "substantial case on the merits").

## II. The Balance of Equities No Longer Supports the Stay

Because Plaintiffs can no longer establish even a substantial case on the merits of their challenge to the Payment Provisions, the Court need not even consider the remaining three stay

4

factors—irreparable harm to Plaintiffs, injury to the other parties, and the public interest. *See La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 225 (5th Cir. 2010) ("Because we have determined that Plaintiffs cannot show a substantial likelihood of success on the merits, we need not address [the party's] additional arguments regarding the other necessary elements."). But, in any event, the balance of those remaining factors likewise no longer supports a stay. When the stay was initially entered, Plaintiffs faced substantial irreparable harm absent a stay because the Rule's Underwriting Provisions would have required costly and fundamental changes to their businesses, dramatically reduced loan volume, and caused many businesses to shut down. *See* 82 Fed. Reg. 54472, 54826 (Nov. 17, 2017).

The "irreparable harm" that Plaintiffs now face pales in comparison. Plaintiffs cite run-of-the-mill costs their members will incur to come into compliance with the Payment Provisions—adjusting IT and compliance systems, revising client communications, and training employees. Those harms do not come close to outweighing the harm that keeping the Payment Provisions stayed would cause the Bureau and the public. The Bureau duly promulgated the Payment Provisions to protect consumers from the significant fees and other harms they incur when lenders repeatedly try to withdraw payment from distressed accounts, and to give consumers advance notice about withdrawals that they might not expect. When the parties first sought the stay, the fate of these protections was uncertain because the Bureau planned to revisit the Rule in a new rulemaking. ECF No. 16 at 2-3. But, now, there is certainty: The Bureau did not substantively revise the Payment Provisions in its now-completed rulemaking, and the Payment Provisions will take effect if and when this Court's stay is lifted. The Bureau's and the public's interest in giving consumers the Payment Provisions' important protections easily

outweighs the "harm" Plaintiffs will suffer in adjusting their practices to comply with those Provisions.

Plaintiffs badly err to the extent that they suggest that the Bureau's interests are diminished because it "happily joined in the staying the compliance date for four years." ECF No. 97 at 12. While the Bureau did not oppose the stay while its rulemaking was ongoing and while there was arguably a "substantial question" on the removal-provision issue, it promptly took action to lift the compliance-date stay as soon as the basis for the stay disappeared. After the Bureau finalized its rule that left the Payment Provisions in place, the Supreme Court held that the removal provision protecting the Bureau's Director was invalid, and a Director fully accountable to the President ratified the Payment Provisions, the Bureau quickly indicated it would move to lift the compliance-date stay. ECF No. 71 at 3. It did not file such a motion at the time only because the Court stated that it preferred for the parties to instead proceed expeditiously to final judgment. And the Bureau now seeks to lift the compliance-date stay in light of Plaintiffs' suggestion that the Court put off final decision for many more months while the Fifth Circuit considers two other cases.

There is likewise no merit to Plaintiffs' bizarre suggestion that the Bureau should have "commenc[ed] a new rulemaking" to set a new compliance date while this litigation was pending. ECF No. 97 at 12. Surely Plaintiffs would have cried foul (and likely run to court) if the Bureau had moved to set a new compliance date while the existing compliance date was stayed. Nor is there any basis to require the Bureau to undertake a new rulemaking now—because the original Rule is valid.

### III. Plaintiffs Are Not Entitled to a Lengthy Extension of the Stay

Finally, Plaintiffs are not entitled to a lengthy extension of the stay to give them "time … for implementation." ECF No. 97 at 13. Plaintiffs have now had 1,364 days and counting to make preparations, and they have only themselves to blame if they sat on their hands. When they first sought the stay, Plaintiffs asked the Court to extend it for 445 days past final judgment to allow them to defer all steps toward compliance[2]—and the Court rejected that request. ECF No. 53 at 3 (declining "request to stay the compliance date of August 19, 2019 until 455 days from the date of final judgment in this action"). Plaintiffs cannot now credibly claim that the Bureau somehow "flouts this Court's stay" by urging the Court to lift the compliance date without such a lengthy extension. ECF No 97 at 14.

Nor is there any merit to Plaintiffs' contention that the stay, by definition, "had to toll the implementation period." ECF No. 97 at 15. Tellingly, Plaintiffs cite no authority for that proposition, aside from a single decades-old case where the court, in the exercise of its discretion, extended a stay to give challengers time for implementation. ECF No. 97 at 14-17 (citing Order, *Michigan v. EPA*, No. 98-1497 (D.C. Cir. June 22, 2000)). The Court should not grant Plaintiffs such a lengthy "implementation period" here. The Court already denied that request; there is no reason to think Plaintiffs' members needed so much time to prepare for the Payment Provisions' modest requirements in the first place (rather, that time was needed to comply with the far more complex Underwriting Provisions that were still in place when the parties sought the stay); and Plaintiffs have long been on notice that the Court could enter judgment and lift the stay at any time.

---

[2] The Bureau supported that request because, at the time, the Underwriting Provisions were still scheduled to take effect, and, unlike with the Payment Provisions, lenders would have needed significant time to come into compliance with those far more extensive requirements.

7

Finally, Plaintiffs widely miss the mark in contending that the Bureau's request that the Court lift the stay is "unlawful under the APA" because the Bureau must adopt and explain a new compliance date through notice-and-comment rulemaking. ECF No. 97 at 17. The Bureau is not setting a new compliance date; it is asking the Court to lift the stay of the compliance date that the Bureau properly set when it promulgated the Rule almost four years ago. To be sure, compliance will not in fact become mandatory until the Court decides that the stay will expire. But the APA rulemaking requirements that Plaintiffs invoke, of course, do not limit the Court's discretion to lift the stay whenever the circumstances warrant it—as they do now.

## **CONCLUSION**

For the foregoing reasons, the Court should lift the stay of the compliance date for the Payment Provisions of the Rule.

Dated: August 12, 2021

Respectfully submitted,

STEPHEN VAN METER
Acting General Counsel

STEVEN Y. BRESSLER
Acting Deputy General Counsel

 /s/ Kristin Bateman
KRISTIN BATEMAN (Cal. Bar No. 270913)
KEVIN E. FRIEDL (NY Bar No. 5240080)
KAREN BLOOM (DC Bar No. 499425)
Attorneys
Consumer Financial Protection Bureau
1700 G Street, NW
Legal Division
Washington, DC 20552
Telephone: (202) 435-7821
Fax: (202) 435-7024
Kristin.Bateman@cfpb.gov

*Counsel for Defendants Consumer Financial Protection Bureau and David Uejio*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Michael A. Carvin
Christian G. Vergonis
Jones Day
51 Louisiana Ave., NW
Washington, DC 20001-2113

Laura Jane Durfee
Jones Day
2727 N. Harwood
Dallas, TX 75201

/s/ Kristin Bateman
Kristin Bateman
*Counsel for Defendants*