IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, LTD. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU *et al.*, <br><br> Defendants. | Civil Action No. 1:18-cv-295 |

## PLAINTIFFS' RESPONSE BRIEFING
## ON COMPLIANCE DATE

MICHAEL A. CARVIN
 D.C. Bar No. 366784
 Admitted *pro hac vice*
 macarvin@jonesday.com
CHRISTIAN G. VERGONIS
 D.C. Bar No. 483293
 Admitted *pro hac vice*
 cvergonis@jonesday.com
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

LAURA JANE DURFEE
 Texas Bar No. 24069653
 ldurfee@jonesday.com
**JONES DAY**
2727 North Hardwood Street
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*Counsel for Plaintiffs*

The 2017 Rule's original compliance date, which has long since passed, gave lenders twenty-one months to implement measures needed to come into compliance. As explained in Plaintiffs' supplemental brief, the Court's stay paused the compliance clock, and any order lifting the stay must restore the parties to the status quo preserved by the stay. Thus, any order should set the compliance date at 445 days (or, at a minimum, 286 days) from the date the Court lifts the stay, reflecting the time left for compliance when the stay was sought (or entered). If the Court were to hold that the stay did not toll the compliance period, then it should remand to the agency for notice-and-comment rulemaking to set a new compliance date. In all events, the Court should leave the stay in place pending an appeal.

Rather than address whether restoration of the status quo entails a 455-day implementation period or a 286-day one, the Bureau simply proclaims that there is no reason to allow "more than" a thirty-day delay between judgment and compliance with a Rule that originally "set the compliance date to be 21 months after the Rule's publication." Defs. Suppl. Br. 1, 3. This new, poorly reasoned litigation position contradicts the plain terms of this Court's stay and the APA.

## I.    LIFTING THE STAY REQUIRES RESTORATION OF THE STATUS QUO.

In discussing how long the stay should "remain in place" following judgment, the Bureau conceptualizes the question incorrectly. The proper inquiry is to determine the consequence of lifting the stay. And because a stay is designed to *preserve* the status quo, any lifting of the stay must, as a matter of law, *restore* the parties to the pre-stay status quo and provide Plaintiffs' members with the time left for implementation that they had when they sought the stay (445 days) or, alternatively, when the Court entered the stay (286 days). *See* ECF No. 99, at 1–4 ("Pls. Suppl. Br."); ECF No. 97, at 13–17 ("Stay Opp'n"). That reflects how stays ordinarily operate, holds the Bureau to its bargain, and avoids making Plaintiffs' members worse off than before the stay. *See* Pls. Suppl. Br., Ex. A (D.C. Circuit order in *Michigan v. EPA*); *R.J. Reynolds Tobacco Co. v. FDA*,

823 F. Supp. 2d 36, 53 (D.D.C. 2011) ("as a consequence of" stay of implementation of rule with fifteen-month implementation period, agency enjoined from enforcing rule "until 15 months after a final ruling by this Court").

For this reason, the Bureau's policy arguments for how long the court should keep the stay in place are irrelevant here. The only question for the Court is whether to return the parties to the status quo as of the date the stay was entered, or as of the date of the parties' joint motion seeking entry of the stay. For reasons explained in Plaintiffs' opening supplemental brief, the equities support the latter. *See* Pls. Suppl. Br. 4. Tellingly, the Bureau's supplemental brief fails to even address this question. In any event, the Bureau's five justifications for a shortened compliance period lack merit.[1]

*First*, the Bureau says that a "30-day delay is consistent" with the APA because 5 U.S.C. § 553(d) requires at least thirty days before a rule may take effect. Defs. Suppl. Br. 1. But the APA's baseline minimum for the time needed to "adjust" to a rule (*City of Arlington v. FCC*, 668 F.3d 229, 245 (5th Cir. 2012)) says nothing about the appropriate compliance period here, where the agency determined that a twenty-one month compliance period was appropriate and the Court "postpone[d]" that compliance period "to preserve status or rights pending" judicial review. 5 U.S.C. § 705. Likewise, § 553(d)'s thirty-day requirement does not supplant the APA's procedural protections, and the Bureau fails to explain how it can unilaterally modify the Rule's twenty-one-month compliance period without undertaking another round of notice-and-comment rulemaking, *see* Pls. Suppl. Br. 4–5; Stay Opp'n 17–18.

*Second*, the Bureau offers no evidence for its ipse dixit assertion (Defs. Suppl. Br. 2) that

---

[1] Even if the question were how long the stay should "remain in place" as an equitable matter, the answer would be 455 days (or 286 days) for the same reasons set forth here.

compliance with the payments provisions will not be onerous, a position that contradicts the Bureau's adoption in the Rule of a twenty-one-month implementation period. *See R.J. Reynolds*, 823 F. Supp. 2d at 52 (rejecting agency's "bare assertion" that regulated entities did not require full implementation period included in statute). The Bureau similarly does not support its claim (Defs. Suppl. Br. 3) that the twenty-one month implementation period was designed *solely* for the underwriting provisions, when the 2017 Rule made no such distinction. In contrast, Plaintiffs' members—the parties most familiar with the burdens of restructuring their businesses—have specified the particular steps needed for implementation of the payments provisions and explained in detail why implementation will take, at least, between six and twelve months. *See* Ovenden Decl., ECF No. 84-1 (Nov. 20, 2020); *see also* Stay Opp'n 11–12. The Bureau fails to address this evidence. Nor does the Bureau address the COVID pandemic, which has rendered implementation even more burdensome.

*Third*, the assertion that Plaintiffs' members have had time to comply, Defs. Suppl. Br. 3–4, perversely assumes that they should have undertaken the very implementation burdens that the stay was designed to avoid while the Court was adjudicating the merits. This bait and switch would put Plaintiffs' members in a far worse position now than before the stay, because implementation on a shortened timetable is far more expensive. Ovenden Decl. ¶ 10. The Bureau's current position also contradicts its prior representation to the Court that the stay was designed to free Plaintiffs' members from the burdens of *implementation*, *i.e.*, that "[a] stay … is necessary" because "Plaintiffs' members will need to make time-consuming and costly changes to their business practices in order to *prepare* to comply with the Rule." Jt. Mot., ECF No. 16, at 4 (emphasis added). The stay relieved Plaintiffs' members from these implementation burdens, and once it was entered, "no reasonable litigant could have understood that the [compliance deadline]

remained in effect or would be enforced against it." *Univ. of Chi. Med. Ctr. v. Sebelius*, 56 F. Supp. 3d 916, 922 (N.D. Ill. 2014). And the Bureau offers no authority for its unprecedented position that Plaintiffs' members should have effectively conceded on the merits and voluntarily spent millions to prepare for compliance notwithstanding the stay. *Cf.* Stay Opp'n 11–17.

*Fourth*, the Bureau wrongly asserts that the Court "repeatedly denied" Plaintiffs' request to "extend [the compliance-date stay] past final resolution of this case." Defs. Suppl. Br. 4 (citing ECF Nos. 29, 36, 53). The Court did no such thing. Rather, once it determined that a stay was appropriate, it merely entered the stay without preemptively setting the compliance date at a number of "days from the date of final judgment." Order, ECF No. 53, at 3. The Court's deferral of a time certain could have reflected the possibility that the stay might be lifted before (or, in the event of an appeal, after) final judgment. Or it could have reflected the Bureau's own representations that it intended to "address the Rule's August 19, 2019 compliance date." *Id.* at 2. Regardless, once the Court froze the status quo by entering a § 705 stay, Plaintiffs were entitled to rely on the stay, and the Bureau was on notice that it would need to act if it wished to shorten the time left on the implementation clock. After representing to the Court that it might change the compliance period, and squandering the opportunity to do so, it cannot now secure a windfall.

*Fifth*, the Bureau rewrites history and argues that "th[e] basis for the stay vanished" when *Seila Law* declared that the Bureau was unconstitutionally structured. *See* Defs. Suppl. Br. 4. This non-sequitur ignores that the legality of the Rule continues to be at issue, which is why this Court previously left the stay in place after *Seila Law* and pending resolution of the motions for summary judgment. Minute Entry, ECF No. 72. And even if this Court concludes that the Bureau's "ratification" of the payments provision was proper, the Bureau has already conceded that "ratification does not change the amount of time companies have to come into compliance with

the Payment Provisions." Defs. Summ. J. Cross Mot. & Opp'n, ECF No. 82, at 21.

## II.    THE BUREAU MUST USE NOTICE-AND-COMMENT RULEMAKING IF IT INSISTS ON A NEW COMPLIANCE DATE.

To the extent the stay did not toll the implementation period, the Bureau would need to employ notice-and-comment rulemaking to set a new compliance date. *See* Pls. Suppl. Br. 4–5; Stay Opp'n 17–18. It is procedurally and substantively unlawful for the Bureau to attempt to unilaterally alter the compliance period by fiat in litigation without undertaking a new rulemaking.

Indeed, almost all the Bureau's late-raised policy arguments and unsupported factual claims for a brand new compliance period relate to considerations *it might have* balanced if it undertook its own rulemaking on a new compliance period for the payments provisions. Contrary to the Bureau's arguments, the stay did not prevent the Bureau from doing so. Indeed, the Bureau told the Court that it intended to "address the Rule's August 19, 2019 compliance date" while the Rule was stayed. Order, ECF No. 53, at 2. And, during the pendency of the stay, the Bureau used rulemaking to change *the compliance date* of the underwriting provisions. It also undertook other administrative actions, including repealing the underwriting provisions and purporting to "ratify" the payments provisions. Having failed to address the compliance period for the payments provisions in multiple proceedings, the Bureau cannot now, for the first time in litigation, offer unsupported assertions about the burdens of, and appropriate timeline for, compliance.

### CONCLUSION

For the foregoing reasons, if the Court were to grant summary judgment for Defendants, it should set the compliance date for the payments provisions at 445 days (or, at a minimum, 286 days) from the date the stay is lifted. Absent returning the parties to the pre-stay status quo, the Court should remand to the agency to set a new compliance date via notice-and-comment rulemaking. In all events, the Court should maintain the stay pending appeal.

Dated: August 16, 2021

Respectfully submitted,

*/s/ Laura Jane Durfee*

MICHAEL A. CARVIN
 D.C. Bar No. 366784
 Admitted *pro hac vice*
 macarvin@jonesday.com
CHRISTIAN G. VERGONIS
 D.C. Bar No. 483293
 Admitted *pro hac vice*
 cvergonis@jonesday.com
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

LAURA JANE DURFEE
 Texas Bar No. 24069653
 ldurfee@jonesday.com
**JONES DAY**
2727 North Hardwood Street
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of August 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: August 16, 2021

/s/ Laura Jane Durfee
Laura Jane Durfee
*Counsel for Plaintiffs*